Good morning, Your Honors. Ina Lipkin on behalf of the Petitioner. What sets this Petitioner apart from some of the other cases heard this morning regarding the Butta-Bossi prepare is that the Petitioner here refutes having had any contact with Mr. Bossi himself and denies that he had had a false application prepared by Mr. Bossi. The IJ had never made any credibility findings regarding Mr. Bossi's testimony, even though that he was a convicted felon, even though that he had entered into a plea agreement with the government. Secondly, the judge relied on inference and speculation to conclude that this Petitioner's application was false. And thirdly, the Petitioner's testimony is frivolous. With respect, Counsel, this is one of these, if it looks like a duck and it quacks like a duck, it's a duck, isn't it? Mr. Singh's application had identical statements and scenarios to virtually all of the ones filed by Mr. Bossi and Mr. Mali. They had the same story about an arrest outside of Gurundwara, a police jeep stuck in the mud and escaped through wild vegetation. They also involved calling a relative who convinced the applicant to leave India. This is identical to hundreds of these things. They also noted similar identical awkward phrasing that was used in all four applications. The other applications have been filed with one and a half years of Singh's application. And I'm just going through a list. I'm looking for your response. After he signed the application by Balbir Singh, Bossi had translated, certified and notarized many of the documents that he submitted and Mali served as his interpreter at the asylum interview. I could go on and on and on, but basically, other than the use of a different name, it's all the same. Why is that wrong? Why am I misunderstanding this? Well, I'll take each of those points of inconsistency found by the IJ. We'll call them badges of fraud, perhaps. Well, I'll start first with the similar phrasing. There's nothing in the record to show that it would be incredible for a jeep to be stuck in the mud in the numerous unpaved roads of the Punjab. There's no countering evidence from the government other than some similarity in other applications to show that this is not a daily occurrence. I'm sure you're a fine lawyer and I'm sure an outstanding person. I commend you for making your argument. But, I mean, are you really, really here to tell us that when you have this same story again and again and again and again and it's clear that Mr. Bossi and Mr. Mali were all over this. Notarizing, coaching, counseling, and so on, that he had nothing to do with them. I mean, isn't that incredible? Well, Your Honor, the problem is that the government didn't produce any evidence of Indian applications, specifically applicants from the Punjab, with cases that have been approved that were not found to be prepared by Mr. Bossi. Didn't they have testimony from Mr. Bossi that talked about all of this? Right, but the point I'm making is that, again, there's nothing to disprove that certain elements or phrasing or even wording when translated from the Punjabi language to the English language wouldn't render the same kind of similarity that you might find in thousands of applications. Mr. Bossi is not accused of preparing thousands of applications. That could happen in the translation, and it could be something that's very familiar. I'm very familiar with a lot of these Sikh cases, and the standard story you get is, I was involved with the Aqidiman party in various ways, and Free Khalistan, and so on, and they took me down to the station and they used heavy rollers on my legs. I can recite them in my sleep. And that actually is plausible in the sense of involvement with a political party, and that apparently is a standard way for the police, if they're going to beat up on you, to do it. This one's much more, the stuck in the jeep, the jeep stuck in the mud and escaping through the underbrush, that's much more sort of particular, with the mechanism of escape, and for that one to come over and over again. Do we know what movie Mr. Bossi said he saw that in that gave him the idea? He said he saw it in a movie. Some Bollywood movie, I don't know. I made my point on that one. Moving on to some of the other elements. Your Honor, I believe you also mentioned that Mr. Mali was the interpreter, and that Mr. Bossi's signature appeared on certain translations of documents. The problem is, as you've heard before, Mr. Mali was not produced as a witness. And there is nothing in the record to show that Mr. Mali, apart from his association with Mr. Bossi, did not perhaps render his services as an interpreter for other individuals. I understand that Mr. Bossi refuted ever working with anyone else other than his own clients that he prepared applications for. But didn't the, at the asylum interview, wasn't it noted that Mr. Mali was there as an interpreter? Right. I'm saying that it's possible that Mr. Mali, who wasn't there to, you know, agree or to deny, admit or to deny, he may have been an interpreter for other people as well, not only the clients that he shared with Mr. Bossi. I understand, but for our purposes, perhaps I misunderstood. I thought you were basically saying, your client's different, because even though there are a few little indicia here of his relationship with Bossi and Mali, he really didn't have any relationship. These are real true stories. And this is just a coincidence that it's identical to all these other stories. So I'm saying that since the asylum officer's record suggests that Mr. Mali was there as an interpreter, we can, at least the IJ, can rely upon the fact that at least that's what was represented to the asylum officer. Independent of Mr. Bossi. Is that a fair statement? Yes. The petitioner had never brought up any kind of claim that this Mr. Mali was some kind of different Mali than the one working with Bossi. You know, the testimony from not just Mr. Bossi, but from the agent Eisenhardt, who says that to his knowledge, there are about 100 of these false applications prepared by Mr. Mali and Mr. Bossi. And to his knowledge, there are about 15 of them that contain the story of the Jeep. Is it your position that your client was the guy in the Jeep? Yes, he was the guy in the Jeep. He was the original story. Everybody else copied him. That's right. Maybe that's the one the Bollywood movie was based on. Also, another thing I want to point out, and I will reserve some time, is that at all times, Mr. Bossi could not identify this petitioner as a person he worked with. A hundred clients is not that many. Wasn't his file found among the files that the agents found when they searched Mr. Bossi's and Mr. Mali's office? I don't know that that was a fact. Perhaps not. I don't believe so. I may be thinking of another one of the cases. There are so many. No. And so, based on the possible equivocal testimony of Mr. Bossi, who may have been coached before coming to court regarding this case, we will never know, there's just not enough here to find that the petitioner made a false claim or to warrant that frivolous finding. I'm going to reserve the rest of the time. May it please the Court, Lyle Jenser again for the government. Maybe I'll focus on one other aspect, and I'll try to keep my time short. It's interesting that in this case, because of scheduling problems, that Mr. Bossi testified before Mr. Singh. So Mr. Singh knew exactly what was coming up. Bossi testified that he prepared, just like in the other three cases we've heard, Singh came up and testified, well, wait a minute, no, it was a guy named Balbir Singh who did this. And what ended up happening, he never was able to produce Balbir Singh, even though he knew this was going to be an issue in the case. Because of additional scheduling problems, the immigration judge gave them a, I think it was a five-week extension or continuance, so that they could bring in Special Agent Eisenhardt. During all this time, Mr. Singh never bothered to try to find this Balbir Singh. Or maybe never succeeded. Never succeeded, but he also, his testimony was, well, he was a friend of a friend, and somebody introduced me to him, and I never knew I had to find him. As the immigration judge stated then, if that's so, bring in the friend. There were other ways of doing this, of skinning this cat. Show us something, because we know that Mr. Singh is saying, I prepared the, or that my firm prepared it, that we often signed fake names. Mr. Bassi said that, I'm sorry. It's actually Mr. Singh Bassi, similar name. Mr. Bassi said, I prepared this. And we have this inconsistency or this conflict that was clearly within the ability of Mr. Singh to rebut, and he never did so. He never even bothered to address the fact that Mr. Bassi and Mr. Mali had acted as his translators and interpreters at various asylum hearings and in interpreting documents. He just totally ignored all that evidence. The final piece here is, we do have the three declarations that were submitted that Mr. Eisenhardt, Special Agent Eisenhardt, brought with him that all had the exact same story. But what's very interesting about them is if you take a look at Mr. Singh's statement, he uses two peculiar phrases, by my good luck, the Jeep got stuck. And that's at page 217 of the administrative record. You'll find the exact same statement, by my good luck, the Jeep got stuck, in exhibits or the first two declarations, A and B, that's at 220 and 223. He also uses not I escaped, I was saved. You'll find those in the other two as well. The coincidences here are just too great. The immigration judge balanced all the evidence. The evidence was probative. She gave Mr. Singh the opportunity to cross-examine, to bring in any witnesses he wanted. He did not do so. Under these circumstances, clearly substantial evidence supports the finding of that it was not credible. We'll also note that Mr. Singh did not particularly raise in his brief, but there was a frivolous asylum finding. Unless the Court wants to hear about that, he basically waived it. Subject to your further questions, that will conclude my argument, Your Honor. Thank you for your time. Thank you. Your Honors, the Petitioner was aware that he should present the preparer of his application, an individual named Belbir Singh. He tried to find him. He was unable to find him. It's someone who prepared his application many years prior to his appearance in court. What about the friend? What about the friend who found him? There is nothing in the record regarding his efforts to find the friend, but it is our position that some efforts were made and he was simply unsuccessful in doing so. And he did raise the frivolous argument. Thank you so much, Your Honor. You did your best. Singh v. McCasey now submitted for decision.
judges: Todd, Fletcher W. , Smith M.